IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
MIDDLE DIVISION

LUIS EASTMAN SWEENEY )
)
    Plaintiff, )
)
Versus ) Civil Action #: _____
) (Assigned to: _____ )
TENNESSEE DEPARTMENT OF )
SAFETY, An Agency of the State ) Jury Demand: YES
of Tennessee, by and through, )
BILL GIBBONS, Commissioner ) COMPLAINT UNDER TITLE VII
Tennessee Department of Safety, ) OF THE CIVIL RIGHTS ACT OF
) 1964
and )
)
STATE OF TENNESSEE, by and through )
BILL HASLAM, Governor of the )
State of Tennessee. )
)
    Defendants. )

    1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, for employment discrimination. Jurisdiction is specifically conferred upon the Court by 42 U.S.C. § 2000e-5. Plaintiff is a state employee, employed by the Tennessee Department of Safety as a State Trooper. Accordingly, relief is sought under 42 USC § 200e-5.

    2.    Plaintiff, Luis Eastman Sweeney, is a citizen of the United States and the State of Tennessee and resides at 837 Rands Way, Columbia, TN 38401, 931-215-3045 and has resided at this address since August, 2004.

    3.    Defendant Tennessee Department of Safety is an Agency of the State of Tennessee and is the employer of the Plaintiff. Commissioner Bill Gibbons, the current Commissioner of the Tennessee Department of Safety, is identified as defendant in his official capacity as the Commissioner of the Tennessee Department of Safety. Defendant Tennessee Department of Safety/Gibbons' address is 1150 Foster Avenue, Nashville, TN 37243. This defendant's phone number is (615) 251-5200. Service of process for this Defendant is through the State Attorney General for the State of Tennessee, Honorable Robert E. Cooper, Jr., who's address is 425 5th Avenue, Nashville, TN 37243, this defendant's phone number is (615) 741-3491.

    4.    Defendant State of Tennessee, by and through Governor Bill Haslam, is a sovereign state and part of the compact known as the United States of America, and is

1

responsible for acts and actions of its departments, and therefore Governor Haslam is merely named as a defendant in his official capacity as the chief executive of the State of Tennessee, and service of this action should be made upon the State Attorney General for the State of Tennessee, Honorable Robert E. Cooper, Jr., who's address is 425 5th Avenue, Nashville, TN 37243, this defendant's phone number is (615) 741-3491.

5. Plaintiff is currently employed by the Defendant Tennessee Department of Safety and has been so employed since August, 1989. Initially, Plaintiff was employed on Capitol Hill as a Special Agent by the Defendant Department of Safety and beginning July 1991 was employed as a Tennessee State Trooper. Plaintiff was assigned to Maury County as a State Trooper July, 1991. Except for the time frame of January 2009 through August 2010, Plaintiff has always been assigned to Maury County as a State Trooper. Plaintiff reports in to his headquarters by radio to 1209 N. Locust Avenue, Lawrenceburg, TN 38464, phone (931) 766-1425.

6. Defendants discriminated against the Plaintiff in the manner indicated in paragraphs 9 and 10 of this Complaint on or about January 5, 2009 (however, the discrimination was institutionalized and ongoing against Plaintiff prior to January 5, 2009, the date the Title VII issues crystallized as actionable).

7. Plaintiff filed charges against the Defendant with the Tennessee Human Rights Commission or the Equal Employment Opportunity Commission charging the Defendants with the acts of discrimination indicated in paragraphs 9 and 10 of this Complaint on or about January 5, 2009; furthermore, the charges filed were a 'continuation' of the initial charges lodged with the Tennessee Human Rights Commission or the Equal Employment Opportunity Commission. These charges should have but failed to bear all the same internal docketing numbers utilized by the Tennessee Human Rights Commission or the Equal Employment Opportunity Commission, but such charges did bear on the same operant conduct complained of in this pleading.

8. The Equal Employment Opportunity Commission issued a Notice of Right to Sue, dated June 20, 2012, which was received by the Plaintiff on or after June 22, 2012, a copy of which Notice of Right to Sue is attached hereto identified as 'Plaintiff's Exhibit # 1, Notice of Right to Sue".

9. Because of Plaintiff's (1) race, African-American, and, (2) color, Black, the Defendants:

    a. Retaliated against Plaintiff for having filed a charge of discrimination.

    b. Retaliated against Plaintiff for having previously filed charges of discrimination.

    c. Retaliated against Plaintiff by denying him the equal opportunity to participate in rights protected by the 1st Amendment to the United States Constitution, i.e. Free Speech.

d. Retaliated against Plaintiff by denying him the equal opportunity to participate in rights protected by the 14th Amendment to the United States Constitution, i.e. Due Process of Law.

e. Retaliated against Plaintiff by denying him the equal opportunity to participate in rights protected by the Equal Protection Clause of the United States Constitution.

10. The circumstances under which the Defendants discriminated against the Plaintiff were as follows:

a. Historically, Plaintiff has been inclined to participate in the political process and informed the Defendants, through his chain of command with the Tennessee State Troopers, that Plaintiff desired to run for Governor of the State of Tennessee. Plaintiff was advised that to do so would be a violation of the 'Hatch Act' as such elected office was a 'political' or 'partisan' office and Plaintiff would necessarily have to resign from his position with the Tennessee Department of Safety if indeed Plaintiff actually ran for governor.

b. Plaintiff did not pursue his ambition to seek the office of Governor of Tennessee.

c. Plaintiff did decide to run for the office of Sheriff of Maury County for the 2010 election cycle. The office of sheriff is a constitutional office as defined by the Constitution of the State of Tennessee and is a 'non-partisan' office.

d. Plaintiff has been a resident of Maury County since July, 1991 and enjoyed excellent name recognition, excellent reputation as a citizen of Maury County, considerable experience as a law enforcement officer, and felt compelled to offer the citizenry of Maury County the opportunity of choice for a fresh opportunity to elect as Sheriff of Maury County an individual that was not 'part of the system' and who enjoyed the vision of returning the office of sheriff to the people.

e. Plaintiff authored two 'self-published' books, *The System of Things* and *The System of Things, II, (True Justice Went to Hell)*. Both of which were self-published by 2008 and could easily be viewed as non-flattering about the notion of individual justice within the system relative to the life of the Plaintiff. Upon information and belief, individuals employed by the Defendants at the Defendant Tennessee Department of Safety desired to harm or punish the Plaintiff because of the content of the self-published books.

f. Captain Stephen Hazard, Plaintiff's immediate Captain in the chain of command of the Tennessee State Troopers, stated under oath in a different proceeding that the content of Plaintiff's books upset him to no end and felt as though a fellow State Trooper had stabbed him in the back.

g. On July 7, 2007, Plaintiff properly notified his chain of command, from Captain Hazard all the way through to Colonel Mike Walker, that Plaintiff intended to seek the office of sheriff for the 2010 election cycle in Maury County by paper memo. Plaintiff received no response from his chain of command.

3

h. A second paper memo was transmitted again through Plaintiff's chain of command, notifying the Defendant Department of Safety of Plaintiff's intent to seek the office of sheriff. Again, there was no response forthcoming.

i. Eight months later, on March 19, 2008, an electronic memo, an e-mail, was transmitted by Plaintiff to and through his chain of command, specifically to Captain Hazard, reiterating the content of the paper memos noted in ¶ 15(g-h). Plaintiff finally received a verbal response to this electronic memo, the response was from Lieutenant Mike Bray advising Plaintiff that Plaintiff must report to headquarters.

j. Upon Plaintiff reporting to headquarters, Captain Hazard confirmed that the paper memos and electronic memo had been received and that as a result thereof Captain Hazard consulted with 'Nashville' (Colonel Mike Walker). Plaintiff was told that if Plaintiff ran for sheriff, the Defendant Tennessee Department of Safety was going to transfer the Plaintiff to another county. Captain Hazard further informed the Plaintiff that according to Colonel Mike Walker the basis for the transfer to another county was the existence of a written policy and general order of the Defendant Tennessee Department of Safety that was in place necessitating such transfer. Plaintiff was advised that the order/policy recited, *interalia*,: 'Any State Trooper that runs for any elected office, such State Trooper would be transferred out of the county where that election takes place.' Plaintiff was informed that the policy had been implemented state wide.

k. Each and every State Trooper employed by the Defendant Tennessee Department of Safety is required to sign off on each and every order/policy that is in place, either locally or state wide. There is, nor was there ever, any such written order or policy of the Defendant Tennessee Department of Safety in place that recited *interalia*,: 'Any State Trooper that runs for any elected office, such State Trooper would be transferred out of the county where that election takes place.', as Plaintiff has never signed off on such an order/policy nor been made aware of such prior to the conversations noted in ¶ 15(j).

l. Premised upon the threat of transfer to another county, on May 16, 2008 Plaintiff submitted an EEOC complaint alleging discrimination pursuant to Title VII; however, no affirmative action was taken by the EEOC relative to this complaint.

m. On December 22, 2008, The Defendant Tennessee Department of Safety notified Plaintiff that he had permission to announce Plaintiff's candidacy for sheriff, however, Plaintiff was further informed that Plaintiff would be immediately transferred to Marshall County if Plaintiff did in fact announce his candidacy for sheriff.

n. On January 5, 2009, Plaintiff announced his candidacy for the office of Sheriff of Maury County and immediately, the Defendant Tennessee Department of Safety, by and through Plaintiff's chain of command which included then Colonel Mike Walker, transferred Plaintiff to Marshall County.

o. Upon information and belief, more than one Tennessee State Troopers have run for the office of sheriff in their respective counties and have not been transferred to work in another county upon their announcing their candidacy for sheriff. Upon information and belief, those other State Troopers were white.

p. Premised upon the transfer of the Plaintiff by the Defendants to Marshall County, Plaintiff filed a continuing complaint against the Defendant Tennessee Department of Safety with the EEOC, referencing the complaint noted in ¶ 15(l).

q. November 2009 Plaintiff learned that the Defendants were investigating Plaintiff for allegedly violating the 'Hatch Act' and on February 11, 2010 Plaintiff was suspended for 10 days without pay for allegedly violating the 'Hatch Act'. (That suspension without pay was appealed by the Plaintiff before the Civil Service Commission.)

r. Premised upon the alleged violation of the 'Hatch Act', Plaintiff made another 'continuing' complaint of discrimination to the EEOC. (The EEOC was advised of the appeal to the Civil Service Commission relative to the suspension for 10 days without pay.)

s. Upon information and belief Plaintiff alleges that Defendants' alleged 'Hatch Act' violations and suspension without pay were made to besmirch the honor of the Plaintiff in the eyes of the electorate of Maury County and chill Plaintiff's election campaign and deny him of the constitutionally protected rights previously identified.

t. News of the suspension without pay for the alleged violations of the 'Hatch Act' was used against the Plaintiff during the campaign. The 'Hatch Act' allegations against the Plaintiff had a negative impact on his campaign. It was not until July 10, 2012 (nearly 2 years after the election for sheriff) that the appeal to the Civil Service Commission relative to the suspension for 10 days without pay was ultimately reversed in Plaintiff's favor.

u. From January 5, 2009 through August 5, 2010, Plaintiff was transferred to Marshall County. Once the election results established that Plaintiff was not elected sheriff, the Defendants transferred Plaintiff back to Maury County.

r. The Defendant Tennessee Department of Safety, by the actions hereinbefore complained of, as perpetrated against Plaintiff by the following members of the Defendant Tennessee Department of Safety: former Commissioner Dave Mitchell, former Colonel Mike Walker, Colonel Tracy Trott (then Lieutenant Colonel Trott), Lieutenant Colonel Wayne Springer (then Major Springer), and Captain Stephen Hazard.

s. The Defendant Tennessee Department of Safety has undertaken to deny the Plaintiff his constitutionally protected rights and have illegally attempted to cast Plaintiff as a bad employee in order to achieve two goals: deny Plaintiff the meaningful opportunity to fairly and fully participate in a non-partisan bid for sheriff; and, to create a basis to terminate Plaintiff's employ with the Defendant Tennessee Department of Safety.

5

t.  Plaintiff alleges that the Defendants' undertakings are ongoing and likely continuing and Plaintiff is apprehensive that the Defendants will undertake to terminate Plaintiff's employ with the Defendant Department prior to Plaintiff's 25 year anniversary as a Tennessee Department of Safety employee (which is the date of a vested retirement) all to the end that Plaintiff alleges that he is under the gun of the individuals still in his chain of command whereby there exists a hostile work environment.

u.  The Defendants' actions complained of are due to Plaintiff's race, color, and personal philosophies of truth and honesty.

11.  The acts set forth in ¶ 9 of this Complaint:

a.  Are still being committed by the Defendant Tennessee Department of Safety.

b.  May still be being committed by the Defendant Tennessee Department of Safety.

12.  Plaintiff attaches to this complaint a copy of the charges filed with the Tennessee Human Rights Commission or the Equal Employment Opportunity Commission, which charges are submitted as a brief statement of the facts supporting this Complaint.

Attached as Exhibit # 2, Cumulative (consisting of 5 pages):

Charge of Discrimination Agency # 494-2009-00605;
Charge of Discrimination Agency # 494-2008-01927;
Charge of Discrimination Agency # 494-2009-01741;
Charge of Discrimination Agency # 494-2010-01020; and,
5/28/10 Sweeney Letter to Investigator Erica Stoxtill-Diggs, # 494-2010-0120.


WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

1.  That process issue in this cause and be served upon the Defendants, requiring them to respond according to the law and the Federal Rules of Civil Procedure.

2.  That the Court enjoin the Defendants from taking any negative action against the Plaintiff that could be fairly viewed retaliation against Plaintiff, such as punishing the Plaintiff or terminating his employ, for any and all if such basis for such retaliation could be fairly attributable to the facts raised in this Complaint.

3.  The Court order the Defendants to pay the Plaintiff compensatory damages for emotional suffering and for deprivation of Plaintiff's constitutionally protected rights. The amount demanded is unliquidated and not readily quantifiable but that prior to a trial in this cause such amount will be defined.

4. The Court declare that Defendant engaged in a discriminatory practice or practices with malice or with reckless indifference to the Plaintiff's federally protected rights, as described in this pleading, especially ¶s 9 & 10; and the Court grant Plaintiff such other relief, including the right to amend the Plaintiff's pleadings, award Plaintiff his costs, including discretionary costs, attorney fees, and all other damages to which Plaintiff would be entitled by virtue of federal law.

5. For such other, further, and general relief, the justices of this cause and the equities demand.

_____ 09-18-12
LUIS EASTMAN SWEENEY
837 Rands Way
Columbia, TN 38401
(931) 215-3045


Surety for Costs

I, Luis Eastman Sweeney, am surety for the costs of this cause not to exceed the sum of $1,500.00.

_____
Luis Eastman Sweeney


{Attorney Matt Q. Bastian, *S.C.* # *12562*, assisted Mr. Sweeney in the drafting this pleading}
2488-B Park Plus Drive
Columbia, TN 38401
(931) 446-4517

7