```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
                         COLUMBIA DIVISION
```

LUIS EASTMAN SWEENEY,            )
                                 )
        Plaintiff                )
                                 )      No. 1:12-0112
v.                               )      Judge Campbell/Bryant
                                 )      **Jury Demand**
TENNESSEE DEPARTMENT             )
OF SAFETY, *et al.*,             )
                                 )
        Defendants               )

**TO:  THE HONORABLE TODD J. CAMPBELL**

### REPORT AND RECOMMENDATION

Pending in this case is Defendants' motion summary judgment (Docket Entry No. 50), to which Plaintiff has responded in opposition (Docket Entry No. 55). Defendants have filed a reply (Docket Entry No. 63).

For the reasons stated below, the undersigned Magistrate Judge finds that there are genuine disputes regarding material facts, and that Defendants' motion for summary judgment therefore should be denied.

### STATEMENT OF THE CASE

Plaintiff Luis Sweeney is a retired Tennessee State Trooper who has filed this action pursuant to Title VII of the Civil Rights Act of 1964 alleging racial discrimination and retaliation by his former employer, the Tennessee Department of Safety (Docket Entry No. 45). Also named as Defendants are Bill Gibbons, Commissioner of the Tennessee Department of Safety, and Governor Bill Haslam, who are sued in their official capacities.

Defendants have filed an answer denying liability (Docket Entry No. 46) and they have now filed their motion for summary judgment.

**STANDARD OF REVIEW**

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue of material fact exists

2

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**STATEMENT OF UNDISPUTED FACTS**

The following facts appear to be undisputed in the record:

Plaintiff Sweeney was employed for 25 years as a State Trooper by the Tennessee Department of Safety. At all pertinent times, Sweeney's home county was Maury County. Sweeney is an African-American, and for much of his employment he was the only African-American Trooper in his district.

Sweeney ran for elected office as Sheriff of Maury County in 2010. As required by department policies, Sweeney sought permission from his superiors to run for this office. The department granted permission for Sweeney to seek the office of Sheriff, but informed him that if he did run for this office he would be temporarily assigned to work in an adjoining county during his campaign. On the day after Sweeney publicly announced his candidacy for the office of Sheriff of Maury County, he was temporarily reassigned to Marshall County for a period of approximately 19 months until shortly after the election in 2010. Sweeney alleges that this temporary reassignment to an adjoining

county during the pendency of his campaign for office was racially motivated because white Troopers who ran for elected office were not similarly reassigned.

Sweeney filed charges of racial discrimination against the Department of Safety on May 16, 2008, December 31, 2008, and on May 26, 2009 (Docket Entry No. 45-2). Each of these charges allege racial discrimination by the Department of Safety based upon the temporary reassignment of Sweeney to Marshall County during his campaign for Sheriff of Maury County.

In November 2009, Sweeney became the subject of an internal investigation by the Department of Safety based upon a claim that he had violated state law and Department policy by engaging in political activities while on duty as a State Trooper. This investigation led to Sweeney being disciplined with a 10-day suspension without pay in January 2010.

Sweeney appealed his disciplinary suspension through all levels of appeal within the Department of Safety, and the suspension was affirmed at every administrative level. Sweeney then appealed his suspension to the Chancery Court of Davidson County pursuant to the Tennessee Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322. The Court found that the Department's suspension of Sweeney was "arbitrary and capricious, in excess of statutory authority, violated the exclusion afforded Mr. Sweeney under the very statute that the Department relied upon, and was made in an improper manner and was unsupported by substantial and

material evidence." (Docket Entry No. 60-5 at 21). Sweeney alleges that this internal investigation that led to his suspension was instigated in retaliation for his engaging in protected activity, the filing of the charges of discrimination with the EEOC.

**ANALYSIS**

<u>Discrimination Claim Based Upon Reassignment to Marshall County</u>. Title VII prohibits employment discrimination based upon the employee's race. 42 U.S.C. § 2000e-2(a)(1). Sweeney claims that he was reassigned to Marshall County during his campaign for Sheriff of Maury County because of his race in violation of Title VII.

Sweeney has offered no direct evidence of discrimination. Employment discrimination cases based upon circumstantial evidence are analyzed under the three-step framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The employee must first demonstrate a *prima facie* case of race discrimination; the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for its actions; finally, the burden shifts back to the employee to show that the employer's professed reason is a pretext for discrimination. *Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 347 (6th Cir. 2012).

In order to demonstrate a *prima facie* case of discrimination under Title VII, Sweeney must establish (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and

(4) that a similarly situated employee outside the protected class was treated more favorably than he was. *Dodd v. Donahoe*, 715 F.3d 151, 156 (6th Cir. 2013). From the record in this case, the undersigned Magistrate Judge finds that Sweeney has offered evidence to support each of these four claims. First, Sweeney as an African-American is a member of a protected class. Second, he was transferred from his home county to an adjoining county for duty while he ran for the office of Sheriff. Although the parties dispute whether this temporary reassignment amounted to a materially adverse employment action, the undersigned finds that this temporary transfer could be found to amount to an adverse action against Sweeney. Third, Sweeney was clearly qualified for the position he filled, since he satisfactorily performed his duties as a State Trooper for a number of years. Finally, Sweeney testified in his affidavit and in his deposition that at least some white Troopers who ran for elective office were not reassigned to adjoining counties (Docket Entry No. 60-7 at 27-28 and Docket Entry No. 59 at 2).

Defendants state that Sweeney was reassigned temporarily to Marshall County during his campaign for Sheriff of Maury County in compliance with department policy designed to minimize claims that State Troopers and the Department of Safety were improperly using their offices or positions in local political campaigns. Michael Walker testified in deposition that he was made Colonel of the Tennessee Highway Patrol on March 1, 2006. He testified that in

6

the months before that date the Highway Patrol had come under intense scrutiny and criticism in the public media based on claims of cronyism and political influence in hiring and promotions, and that in response the agency had undergone a dramatic change in top leadership. The new leaders, including Walker, had been charged with eliminating politics and restoring professionalism within Highway Patrol (Docket Entry No. 60-9 at 3-4). Walker further testified that after he became colonel in March 2006, the Highway Patrol adopted a policy of assigning Troopers who ran for elected office in their home county to work temporarily in an adjoining county during their campaign for office. According to Walker, this policy was adopted "to remove some of that stigma that we had with the political involvement." (Docket Entry No. 60-9 at 4).

Tracy Trott testified that he became Lieutenant Colonel in the Highway Patrol in 2006. He testified that, to his memory, everyone in the Highway Patrol who ran for elected office since 2006 had been moved to another country during the period of the campaign (Docket Entry No. 54-1 at 8). Trott explained that this policy was implemented in order to protect the best interests of the Department of Safety and the Trooper to avoid potential criticism by the Trooper's political opponent that the Trooper was performing political activities while on duty or otherwise using his official position improperly to gain political advantage. (*Id.*)

The evidence further shows that the Department of Safety on May 15, 2006, adopted a General Order entitled "Political

Activities." (Docket Entry No. 60-3). This general order contains certain procedural guidelines for employees seeking elected positions, including the employee's obligation to notify his immediate supervisor by written memorandum of his intention to run in any political race. Following a review by the Commissioner's Office, the employee was to be notified in writing of the approval or disapproval of the employee's intention to run for office. Significantly, this general order fails to contain any mention of a temporary reassignment of an employee to another county for the duration of the employee's political campaign. On December 1, 2013, the Tennessee Department of Safety and Homeland Security adopted a general order dealing with "political activity," which apparently was intended to supersede earlier versions (Docket Entry No. 60-4). This general order does contain a provision stating that the Commissioner or Colonel, "for the good of the service," may change an employee's work assignment to avoid potential conflicts during the campaign and election process (*Id*. at 4).

The undersigned Magistrate Judge, upon review of the evidence, finds that there is a genuine issue of material facts regarding when the Department of Safety adopted a consistent, unvarying policy of temporarily assigning a State Trooper to an adjoining county while such Trooper was engaged in a campaign for elected office. The testimony of Mike Walker and Tracy Trott, referenced above, seems to state that such policy was adopted in the spring of 2006. However, the general order on political

activities dated May 15, 2006, fails to contain a statement of such policy. Moreover, insofar as the record indicates, a written policy of such temporary reassignment did not appear in a general order until December 1, 2013. This inconsistency, coupled with the testimony of Plaintiff Sweeney that other Troopers who ran for elective office were not reassigned to a different county, creates a genuine issue of material fact, and suggests the possibility that Defendants' stated reason for reassigning Sweeney to Marshall County was pretextual. Given this uncertainty in the record, the undersigned Magistrate Judge cannot find that the undisputed proof establishes the absence of a genuine dispute of material fact for trial.

<u>Retaliation Based Upon the Internal Investigation</u>. Sweeney claims that the Department of Safety instigated an internal investigation that resulted in a 10-day suspension from work without pay in retaliation for his prior charges of discrimination to the EEOC. To establish a *prima facie* case of retaliation under Title VII, an employee must show (1) that he engaged in activity protected by Title VII; (2) that his exercise of such protected activity was known by the Defendant employer; (3) that the employer thereafter took an action that was materially adverse to the employee; and (4) that a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Moreover, a Title VII retaliation claim must be proved to traditional

principles of but-for causation, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. at 731 (citing *Univ. of Texas Southwest Med. Ctr v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

If the plaintiff employee establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. If the employer does so, the burden shifts back to the plaintiff employee to offer competent evidence of pretext. *Chattman*, 686 F.3d at 349.

Here, Sweeney had filed three charges of racial discrimination against the Department of Safety before the institution of the internal investigation in November 2009. In addition, it is undisputed that the Department was aware of Sweeney's charges. It is further undisputed that the Department commenced an internal affairs investigation of Sweeney that resulted in a disciplinary suspension for his engaging in political activities while on duty. Finally, Sweeney has established that on January 6, 2009, Captain Steven Hazard, Sweeney's superior, wrote a letter to Major Wayne Skinner complaining about Sweeney's charges of discrimination filed with the EEOC as well as apparent statements by Sweeney to the local newspaper, including accusations of racist behavior by the Department (Docket Entry No. 60-10). From the foregoing, the undersigned finds that Plaintiff Sweeney has

offered sufficient evidence to demonstrate a *prima facie* case of retaliation under Title VII.

Defendants assert that the internal investigation of Sweeney was prompted not by racial retaliation against Sweeney but by an unsolicited inquiry from a local merchant that suggested Sweeney was engaging in political activity while on duty as a State Trooper. Specifically, the merchant asserted that Sweeney was scheduled to come to her business in order to pick up campaign signs for his Sheriff campaign while on duty. The Department dispatched an officer to obtain pictures of Sweeney picking up these campaign signs while wearing his uniform and driving a State Trooper patrol car.

As referenced above, the Chancery Court which eventually heard Sweeney's appeal of his disciplinary suspension found that the Department's investigation of Sweeney violated Sweeney's right to procedural due process and that the disciplinary suspension awarded against Sweeney "was arbitrary and capricious, in excess of statutory authority, violated the specific exclusion afforded Mr. Sweeney under the very statute that the Department relied upon, and was made in an improper manner and was unsupported by substantial and material evidence." (Docket Entry No. 60-5 at 21). While the ruling of the Chancery Court is not wholly dispositive of the issue of pretext in this action, the undersigned finds that it at least creates a genuine dispute regarding the reason that the Department instituted an internal affairs investigation against Sweeney.

In summary, the undersigned Magistrate Judge finds that the record before the Court fails to establish the absence of any genuine dispute of material fact for trial. On the contrary, the undersigned finds that there are material factual issues in this case with respect to Sweeney's racial discrimination claim as well as his retaliation claim that should be decided by a jury. The undersigned therefore finds that the Defendants' motion for summary judgment should be denied.

## RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge finds that Defendants' motion for summary judgment (Docket Entry No. 50) should be denied.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 8th day of June, 2015.

/s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge